Plaintiff, a car salesman of the Olcott-Stone Motors, hereinafter referred to as defendant, was seriously injured when an automobile of his employer, being driven by one S.E. Free, left the highway a few miles east of Delhi, Louisiana, turned over and was wrecked. He sues the employer and its insurer, the Hardware Mutual Casualty Company, for workman's compensation, alleging permanent total disability. The suit is resisted on the primary ground that at the time of the accident plaintiff was on no mission for his employer but was acting beyond the scope of his employment and on a mission of his own; in other words, that the accident did not arise out of nor was it incidental to his employment nor did it happen in the course of his employer's trade, business or occupation. And, secondly, that both plaintiff and Free were intoxicated and their condition caused the accident. The primary defense was sustained by the lower court and plaintiff's demand was rejected. He appealed.
Plaintiff was an experienced car salesman. He had been working for defendant, a co-partnership, for only two weeks when hurt. He was paid a commission on sales consummated by him. It was his duty to contact prospective purchasers and induce them, when possible, to purchase. A week or so prior to the accident he contacted Mr. S.E. Free who was in the market for a used car, and during the afternoon of February 13, 1941, closed a trade with him for a 1939 used Plymouth, save the payment of the initial portion of the price, $225. During the afternoon the car was driven about the City of Monroe, Louisiana, by plaintiff, accompanied by Mr. Free, to demonstrate its satisfactory mechanical condition. They last left defendant's used car lot near five o'clock in the afternoon and were together all of the following night.
Mr. Free lacked $150 of having the down payment on the car's price. On Wednesday prior to the accident, he solicited financial assistance from a brother who lived in McGehee, Arkansas, to enable him to purchase a car of this character. The brother was favorably disposed and informed him to come to Vicksburg, Mississippi, the following Friday (February 14th) and meet him there and receive the money, but stated that should he not be there at the time, to `phone to a certain place in Yazoo City, Mississippi, to ascertain his whereabouts.
Plaintiff and Mr. Free imbibed freely during the night of February 13th and arose late the following morning. Their movements there prior to about one-thirty o'clock of the afternoon are not shown. It is certain the car was not brought back to the employer's place of business for the night nor did plaintiff report there that morning prior to commencement of the trip to Vicksburg at said hour.
As before stated, the terms of the sale of the car had been agreed upon; Free was satisfied with its mechanical condition; it only remained for him to produce the initial cash payment to acquire its ownership. Nothing remained for plaintiff, as salesman, to do to finally close the deal. He had assiduously pushed his side of the negotiations to a satisfactory conclusion. But, in violation of his employer's rule governing matters of this kind and without consulting it or anyone in authority, he consented for Free to drive the car to Vicksburg and elsewhere, if necessary, in the hope of contacting Free's brother and procuring the promised cash. Free, in a manner, feeling himself the car's owner, took the wheel at Monroe, refueled it there at his expense and was driving when the *Page 104 
accident occurred. In a way, plaintiff was his guest passenger. Surely, while making this trip plaintiff was not in any way or manner acting as agent or employee. It was no part of his duty as salesman to loan the car to make a trip of this distance purely to accommodate the purchaser, nor was it his duty to accompany the purchaser on such a trip. It was no part of the company's business to transport the purchaser over the country in search of funds to close the sale. Obviously, the trip was made for the personal benefit and advantage of Free. It was against the policy and rules of the employer to take a car of this character beyond the limits of the state in the effort to sell it. The lower court, in written reasons for judgment, said:
"The sole question as the Court sees it in this case is the question of whether or not the accident arose within the scope of the employment of the plaintiff. In other words, whether the defendant is liable to pay compensation for the injury.
"There is no contention that the Plaintiff was demonstrating this car to Mr. Free at the time of the accident. The testimony of both the Plaintiff and Free was that he had already made his decision to purchase the car when he left Monroe. The only purpose for going to Mississippi was to get the money to make the down payment on the automobile.
"The Court feels that there is no provision under the compensation law covering a case of this kind. The evidence clearly shows that this accident arose as the result of the operation of the automobile by Mr. Free himself while he was using the car of the defendant, which the plaintiff had turned over to him to go to get the money, and that the plaintiff was in reality riding with him, not for the purpose of demonstrating the car but simply accompanying him for the purpose stated."
We fully agree with these conclusions.
Plaintiff carried the burden of proving that when injured he was in the discharge of the duties which rested upon him as salesman. He has signally failed to discharge this burden; on the contrary, the opposite has been proven. The case of Thiels v. Younger Motor Truck Company, Inc., et al., La.App., 178 So. 712, decided by this court, is quite similar to the present one.
In Kern v. Southport Mill, Ltd., 174 La. 432, 437, 438,141 So. 19, 21, when an accident occurs in the "course of an employment" and when it "arise out of" the employment, are cogently discussed. Concerning the latter, the court said:
"* * * the statute further requires that the accident must also `arise out of' the employment. By which is meant, that the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed.
"But time, place, and circumstance must determine this. When the ill-fated Titanic foundered in the spring of 1912, all persons aboard her were situated exactly alike as to time and place; but they were not all situated alike as to circumstance. Those who traveled for pleasure were present of their own free choice alone; those who traveled for business, whether their own or that of another, were there of necessity. And, when one finds himself at the scene of accident, not because he voluntarily appeared there but because the necessities of his business called him there, the injuries he may suffer by reason of such accident `arise out of' the necessity which brought him there, and hence `arise out of' his employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred.
"In determining, therefore, whether an accident `arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?"
By no stretch of the imagination can it be said that plaintiff's duties required him to be at the place of the accident. He was there from mere choice, not from coercion or necessity of employment; but was "about" his own business.
The judgment appealed from is manifestly correct; it is hereby affirmed with costs.
 On Rehearing.
To support application for rehearing in this case, appellant's energetic and assiduous counsel submitted elaborate brief challenging the correctness of the opinion of the court and basic reasons assigned for its conclusions on the questions involved. *Page 105 
The brief reflects abundance of labor and earnestness of purpose and position. In order to give the case additional consideration, and to the end that if error had been committed in deciding the case, opportunity to rectify it would be afforded, rehearing was granted.
The somewhat large record has again been studied. This extra effort has not been productive of change in the opinion of this court as regards the correctness of the original opinion and judgment. We are still of the well fixed opinion that the regrettable accident to which plaintiff's disability is accredited, occurred when he was pursuing a mission strictly personal to himself. He was not at the time "performing services arising out of and incidental to his employment in the course of his employer's" business.
For these reasons the former opinion and judgment herein are reinstated and made the final action of this court.
DREW, J., dissents.